UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | BANKRUPTCY NO. 18-02019 |
| | : | |
| TERRY ALLEN NEELEY AND | : | MOTION FOR RELIEF |
| YODY KAY NEELEY; | : | FROM AUTOMATIC |
| | : | STAY |
| | : | |
| Debtors. | : | |

COMES NOW, Nationstar Mortgage LLC dba Mr. Cooper ("Movant") and moves the Court, pursuant to 11 U.S.C. 362 (d) and Bankruptcy Rules 4001 and 9014, to grant relief from Automatic Stay to permit a mortgage foreclosure action in the Iowa District Court and in support thereof states:

1.      That Movant is a creditor of Terry Allen Neeley and Yody Kay Neeley, and legally entitled to enforce the loan agreement and disclosure statement and mortgage executed by Yody K. Neeley and Terry A. Neeley, and delivered to American General Financial Services, Inc., dated July 20, 2007 and filed of record concerning property legally described on said mortgage. Copies of said note and mortgage are attached hereto as Exhibits A and B, respectively. Said note and mortgage were modified pursuant to a Loan Modification Agreement. A copy of said modification agreement is attached hereto as Exhibit B1. A copy of the Assignment to Movant is attached hereto as Exhibit C.

2.      That the Debtors are indebted to Movant in the sum of $35,688.71 unpaid principal balance with interest of 10.46% per annum from and including February 1, 2018. Debtors' monthly payments are currently $414.71. Debtors have not made regular monthly payments and are due for March 1, 2018. That because of said delinquency, Movant desires to foreclose said mortgage.

3.     The estimated market value of the subject property is $15,000.00. The basis for

such valuation is Schedule D of the Debtors' Petition. A copy of Schedule D is attached hereto as

Exhibit D.

4.     Debtors have no equity in the subject property.

5.     The subject property is not necessary to an effective reorganization.

6.     Movant does not have, and has not been offered adequate protection for its

interest in the subject property.

7.     If Movant is not permitted to foreclose said real estate mortgage on said property,

it will suffer irreparable injury, loss and damage.

8.     Charles L. Smith has been appointed Trustee in this matter.

WHEREFORE, Nationstar Mortgage LLC dba Mr. Cooper moves the Court to grant it

Relief from Automatic Stay to permit the foreclosure of its mortgage and for such further and

other relief as the Court deems just and equitable.


PETOSA LAW LLP

By /s/ Benjamin W. Hopkins
Benjamin W. Hopkins AT0003573
Ryan C. Holtgraves  AT0010588
1350 NW 138th Street, Suite 100
Clive, Iowa 50325-8308
(515) 222-9400

ATTORNEYS FOR NATIONSTAR MORTGAGE
LLC DBA MR. COOPER

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing Motion for Relief from Automatic Stay was electronically mailed and/or mailed by United States mail, postage prepaid this 5th day of October, 2018, to the persons listed below.


/s/ Rachelle Bennethum_____
Rachelle Bennethum


COPIES TO:

U.S. Bankruptcy Trustee
Southern District of Iowa
Federal Building, Room 793
210 Walnut Street
Des Moines, IA 50309

Michael L. Jankins, Attorney
700 2nd Avenue, Suite 103
Des Moines, IA 50309

Charles L. Smith, Trustee
25 Main Place, Suite 200
PO Box 248
Council Bluffs, IA 51502

**AMERICAN GENERAL** FINANCIAL SERVICES

## LOAN AGREEMENT AND DISCLOSURE STATEMENT

| DATE 07/20/07 | ACCOUNT NUMBER | TYPE OF LOAN (Alpha |
|---|---|---|

| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | LENDER'S TELEPHONE NUMBER |
|---|---|

AMERICAN GENERAL FINANCIAL SERVICES, INC.
2501 S CENTER ST
MARSHALLTOWN, IA 50158-4548

**BORROWER(S) NAME AND ADDRESS ("I","We")**

YODY K NEELEY
TERRY A NEELEY
9093 NEWTON ST
GRINNELL, IA 50112

I will read this entire Loan Agreement and Disclosure Statement ("Agreement") and all related documents carefully. If I have any questions, I will ask them before I sign any of these documents. By signing, I am indicating my agreement to the statements, promises, terms, and conditions contained in the documents I sign.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| `10.75 % | $ 56363.00 | $ 39229.00 | $ 95592.00 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | $ 398.30 | monthly beginning 08/25/07 |

LATE CHARGE: [X] If any payment is not paid in full within __10__ days after its due date, I will be charged __5.00__ % of the _unpaid_ amount of the payment, but not more than $ __15.00__ or less than $ _N/A_.

[ ] If any payment is not paid in full within ____ days after its due date, I will be charged $ ____ if the entire scheduled payment exceeds $ ____ or $ ____ if the entire scheduled payment is $ ____ or less.

PREPAYMENT: If I pay off early:

[X] I may [X] I will not have to pay a penalty or minimum charge.

[ ] I may [X] I will not get a refund or credit of part of the finance charge.

SECURITY: I am giving Lender a security interest in:

[X] Real estate located at: 9093 NEWTON ST
GRINNELL, IA 50112

[ ] Motor Vehicles

| Year | Make | Model | Vehicle Identification No. |
|---|---|---|---|
| | | | |
| | | | |

[ ] Other Assets

| Other Assets Description |
|---|
| |

[ ] Household items described on the Personal Property Appraisal Form, which I have signed and which has been delivered to me with this Agreement.

ASSUMPTION: Someone buying my home, if it secures this loan, may not assume the remainder of this loan on the original terms unless approved by Lender.

[ ] My loan contains a variable-rate feature. Disclosures about the variable-rate feature have been provided to me earlier.

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

### THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

Borrower

Co-Borrower

### SEE REVERSE SIDE FOR ADDITIONAL DISCLOSURES

UNAA91 (01-15-06) Agreement (1-2)    Page 1

EXHIBIT

A

## ITEMIZATION OF AMOUNT FINANCED

Amounts paid to others on my behalf

| | | | |
|---|---|---|---|
| 1. $ NONE | | PAID TO | |
| 2. $ NONE | | PAID TO | |
| 3. $ NONE | | PAID TO | · |
| 4. $ NONE | | PAID TO | |
| 5. $ NONE | | PAID TO | |
| 6. $ | .160.00 | Title Examination Fee | PAID TO DATASEARCH |
| 7. $ NONE | | PAID TO | |
| 8. $ | .350.00 | Appraisal Fee | PAID TO DATASEARCH |
| 9. $ NONE | | PAID TO | |
| 10. $ NONE | | PAID TO | |
| 11. $ NONE | | PAID TO | |
| 12. $ NONE | | PAID TO | |
| 13. $ NONE | | PAID TO | |
| 14. $ NONE | | PAID TO | |
| 15. $ NONE | | PAID TO | |
| 16. $ | .19.00 | Recording/Releasing Fees RE | PAID TO GOVERNMENT AGENCY |
| 17. $ NONE | | PAID TO | |
| 18. $ NONE | | PAID TO | |
| 19. $ NONE | | PAID TO | |
| 20. $ NONE | | PAID TO | |
| 21. $ ·38266.34 | | PAID TO AGF & YODY K. AND TERRY A. NEELEY | |
| 22. $ 433.66 | | PAID TO AGF & YODY K. AND TERRY A. NEELEY | |
| 23. $ | | PAID TO | |
| 24. $ | | PAID TO | |
| 25. $ | | PAID TO | |
| 26. $ | | PAID TO | |
| 27. $ | | PAID TO | |
| 28. $ | | PAID TO | |
| 29. $ | | PAID TO | |
| 30. $ | | PAID TO | |
| 31. $ | | PAID TO | |
| 32. $ | | PAID TO | |
| 33. $ | | PAID TO | |
| 34. $ | | PAID TO | |
| 35. $ | | PAID TO | |
| 36. $ | | PAID TO | |
| 37. $ | | PAID TO | |
| 38. $ | | PAID TO | |
| 39. $ | | PAID TO | |
| 40. $ | | PAID TO | |
| 41. $ | | PAID TO | |
| 42. $ | | PAID TO | |
| 43. $ | | PAID TO | |
| 44. $ | | PAID TO | |
| 45. $ | | PAID TO | |

Amount Paid on Prior Account with Lender

46. $ NONE

Amounts Paid to me

| | | |
|---|---|---|
| 47. $ | | PAID TO |
| 48. $ | | PAID TO |
| 49. $ | | PAID TO |
| 50. $ | | PAID TO |
| 51. $ | | PAID TO |
| 52. $ | | PAID TO |
| 53. $ | | PAID TO |
| 54. $ | | PAID TO |
| 55. $ | | PAID TO |
| 56. $ | | PAID TO |

$ __39229.00__ Amount Financed (Sum of lines 1 - 56)

$ __774.00__ Prepaid Finance Charges (itemized below)

## PREPAID FINANCE CHARGES

| | | | |
|---|---|---|---|
| 1. $ | 774.00 Points | PAID TO | LENDER |
| 2. $ NONE | | PAID TO | |
| 3. $ NONE | | PAID TO | |
| 4. $ NONE | | PAID TO | |
| 5. $ NONE | | PAID TO | |
| 6. $ NONE | | PAID TO | |
| 7. $ NONE | | PAID TO | |
| 8. $ NONE | | PAID TO | |
| 9. $ NONE | | PAID TO | |
| 10. $ NONE | | PAID TO | |
| 11. $ NONE | | PAID TO | |
| 12. $ NONE | | PAID TO | |
| 13. $ NONE | | PAID TO | |
| 14. $ NONE | | PAID TO | |
| 15. $ NONE | | PAID TO | |

UNAA92 (01-15-08) Agreement (1-2)

**SEE NEXT PAGE FOR IMPORTANT INFORMATION**

Page 2

Initials _____    _____

ARBITRATION AGREEMENT, AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person—the arbitrator—instead of a judge or jury, to resolve the dispute. **TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT ("this Arbitration Agreement").**

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("Covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender, whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

**COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender, any third parties that assigned Retail Contracts or other agreements to Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are American General Finance Corporation, American General Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company. In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

**MATTERS NOT COVERED BY ARBITRATION.** I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies (an "Excluded Collateral Lawsuit"). I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counter claim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover an amount which does not exceed the total sum of $5,000.00 (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit"). If an Excluded Damages Lawsuit is filed, the other party cannot require that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than $5,000, then that claim, counterclaim, cross-claim, or third party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin, or foreclosure or by having filed any claims in court seeking to recover a total sum of $5,000.00 or less.

**ARBITRATION RULES AND PROCEDURES.**

**A.    ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the rules and procedures of the National Arbitration Forum ("NAF") that are in effect at the time arbitration is started and under the rules set forth in this Arbitration Agreement. At my request, Lender will provide me a copy of the NAF Rules. If I lose my copy, Lender will give me another one if I ask for it. I may also obtain a copy of those rules by calling NAF at 1-800-474-2371 or by reviewing NAF's web-site at www.arb-forum.com. In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender and I agree to submit all disputes to the American Arbitration Association ("AAA") for proceedings conducted pursuant to the AAA's Commercial Rules and Expedited Procedures. If there is a conflict between the rules of the NAF (or the AAA) and this Arbitration Agreement, this Arbitration Agreement will govern.

**B.    SELECTION OF ARBITRATOR.** NAF maintains lists of approved arbitrators. NAF will provide Lender and me each a list of seven (7) possible arbitrators. Lender and I will each have an opportunity to strike three (3) persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator.

**C.    STARTING ARBITRATION.** Before I start arbitration, I agree to write to Lender at the address shown for Lender in this Agreement, unless I have received notice of a new address for Lender, and I agree to give Lender a reasonable opportunity to respond and resolve any errors. In my letter, I will give the following information: my name and account number, a description of my claim or dispute and why I believe Lender has made an error, the dollar amount of my claim or dispute, and a description of any other information I need from Lender. Before Lender starts an arbitration, it must write to me at my billing address; describe its claim or dispute; state the dollar amount of its claim or dispute; and give me a reasonable opportunity to resolve the claim or dispute. If a Covered Claim cannot be resolved in the foregoing manner, either Lender or I can start arbitration. Except as described in Paragraph E below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. To start an arbitration, Lender and I agree to follow the rules of the NAF (or, if applicable, the rules of the AAA).

**D.    COSTS OF ARBITRATION.** The NAF and AAA charge certain fees in connection with arbitration proceedings they conduct. I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or the terms of any other agreement with me. Each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by law or by the terms of any other agreement between the parties, to the extent permitted by applicable law.

**E.    CONDUCT OF PROCEEDINGS.** In conducting the arbitration proceedings, the arbitrator shall be bound by the Federal Rules of Evidence; however, the federal or any state rules of procedure or discovery shall not bind the arbitrator. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the loan or other agreement between Lender and me. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

**SEE REVERSE SIDE FOR ADDITIONAL ARBITRATION TERMS**

UNBA31 (1-16-05) Agreement (3-4)                          Page 3                          Initials ___  ___

ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL (con'd)

**F.    ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims involving more than $100,000, any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the NAF or AAA, as the case may be. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision, and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable laws or rules.

**G.    LIMITATION OF PROCEEDINGS.** Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes, or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements). Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons. I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim.

**H.    LIMITATION OF ARBITRATOR'S AUTHORITY:** The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding any punitive damages, the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the arbitrator must state the precise amount of the punitive damages award. The arbitrator must also conduct a post-award review of any punitive damages, allowing the parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the arbitration is conducted. The arbitrator may award injunctive relief that would benefit either Lender or me in connection with resolving a Covered Claim between Lender and me, but the arbitrator may not award injunctive relief for the benefit of other persons or groups of persons who are not named parties to the arbitration proceeding.

**I.    LOCATION OF THE ARBITRATION.** The arbitration will take place in the county where I live unless Lender and I agree to another location. If Lender and I agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

**J.    ENFORCEMENT IN COURT.** Nothing in this Arbitration Agreement shall prevent either Lender or me from enforcing all rights under this Arbitration Agreement if a Covered Claim is filed in court.

**K.    FORUM SELECTION CLAUSE.** If either Lender or I need to file a lawsuit to enforce this Arbitration Agreement or to pursue claims that either may or may not be arbitrable under this Arbitration Agreement, the exclusive venue for that suit will be a state court located in the county where Lender's office is located or where I sign this Agreement, or in the federal court covering that county, unless the governing law requires suit to be filed in another location. Nothing in this paragraph shall prevent either Lender or me from enforcing its or my rights under this Arbitration Agreement if the Covered Claim is filed in court.

**ADDITIONAL INFORMATION.** I may obtain additional information about arbitration by contacting the National Arbitration Forum, Inc., at P.O. Box 50191, Minneapolis, Minnesota 55405. (800-474-2371 (Telephone)). (651-631-0802 (Fax)). www.arb-forum.com (e-mail).

**OTHER IMPORTANT AGREEMENTS.** Lender and I agree:

(a) This Arbitration Agreement does not affect any statute of limitations or claims of privilege recognized at law.

(b) The loan and insurance transactions between Lender and me and other applicable parties are transactions involving interstate commerce, using funds and other resources from outside the state.

(c) The Federal Arbitration Act applies to and governs this Agreement. State arbitration laws and procedures shall not apply to this Agreement.

(d) This Agreement applies to and runs to the benefit of Lender's and my assigns, successors, executors, heirs, and/or representatives.

(e) If any term of this Arbitration Agreement is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.

(f) This Arbitration Agreement supersedes any prior arbitration agreement that may exist between Lender and me and can only be modified in writing signed by the parties.

(g) This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.

SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION

**DATE OF LOAN.** 07/25/07 (the date the Finance Charge is scheduled to begin to accrue).

**CONTRACT RATE.** 10.46 % per year, which is the agreed interest rate. If the "Adjustable Rate Loan" box is checked below, this rate is subject to change as set forth therein.

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the Truth in Lending Disclosure on page 1 of this Agreement, and with all other terms of this Agreement. If the "Adjustable Rate Loan" box is checked below, the payment amounts set forth in the Payment Schedule may change as set forth in this Agreement.

☐ **ADJUSTABLE RATE LOAN.** If this box is checked, I agree that the agreed interest rate I will pay may change on the Due Date of my _____ payment and on that same date every _____ thereafter ("the Change Date"). If there is no corresponding date in any given month, the Change Date will be the last day of the month. (For example, if my rate can change quarterly and my Change Date is January 31, my next Change Date will be April 30.) My interest rate will be based on an index. The index is the highest Prime Rate published in The Wall Street Journal's "Money Rates" table. If this index should no longer be available, Lender will choose a comparable replacement index and will inform me of the new index.

Prior to each Change Date, Lender will calculate the new agreed interest rate by taking the index as of 60 days prior to the Change Date and adding a margin of ____ percentage points. Lender will round the resulting figure down to the next lowest one-hundredth of one percent. Lender will then determine the new monthly payment amount necessary to repay my loan in full on the due date for the final payment.

My interest rate will never increase or decrease on any single Change Date by more than _____ percentage points from the agreed rate of interest in effect immediately preceding the Change Date. Any rate change not implemented as a result of this limitation may be carried over to the next Change Date. My interest rate will never increase by more than eight percentage points (for first mortgage loans) or ten percentage points (for subordinate mortgage loans) over the initial Prime Rate, and in no event will ever be greater than _____ %, and will never be less than _____ %.

The new agreed interest rate will be effective as of the Change Date. The new monthly payment will be effective as of the next regularly scheduled due date subsequent to the Change Date. Lender will send me notice of all rate and payment changes as required by law.

**SECURITY AGREEMENT.** If any type of personal property (property other than real estate ("real property")) is disclosed in the "Security" section of the Truth in Lending Disclosures, to secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (1) the property identified in the "Security" disclosure of the Truth in Lending Disclosures on page 1 of this Agreement; (2) any substitutions or replacements of that property; and (3) the proceeds and products of that property (collectively referred to as the "Collateral"). I also grant Lender a security interest in any unearned premiums from any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance). Lender's security interest shall remain in effect until I have paid in full all amounts due under this Agreement and any modifications, renewals, and extensions thereof. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement when appropriate. If real property is disclosed in the "Security" section of the Truth in Lending Disclosures, I am signing a mortgage or deed of trust covering the real property at the same time that I am signing this Agreement.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that they are jointly and severally liable and that Lender may enforce this Agreement against all or any of them, but not in a combined amount exceeding the amount due.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Maker(s).

**CREDIT INFORMATION.** I authorize Lender to investigate my creditworthiness, including to obtain my credit report at anytime, as permitted by law.

**REQUIRED PROPERTY INSURANCE.** I agree to insure any automobiles, all terrain vehicles, snowmobiles, watercraft, other titled vehicles, large equipment, and dwellings and other structures attached to real property ("Property"), in which I have granted Lender an interest to secure my loan, against all risks of physical damage, including loss by fire and other hazards, for the term of the loan, in amounts and with deductibles approved by Lender ("Required Insurance"). Required Insurance must: (1) be issued by an insurer and have terms and conditions satisfactory to Lender; (2) name Lender as loss payee or mortgagee; (3) not permit the addition of any other loss payee or mortgagee to the insurance policy unless Lender consents in writing; (4) provide that such insurance will not be canceled or modified without at least 15 days prior written notice to the loss payee or mortgagee; and (5) not include any disclaimer of the insurer's liability for failure to give such notice. I may purchase Required Insurance from whomever is acceptable to Lender or provide existing coverage through any insurance company or agent of my choice that is acceptable to Lender. Lender does not sell Required Insurance. I agree to provide to Lender satisfactory proof of Required Insurance. I agree to keep Required Insurance in force until all amounts I owe Lender under this Agreement are paid in full. In the event of damage to or loss of the Property, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may, but is not required to, do so on my behalf. I agree Lender may use any insurance proceeds to reduce any amounts I owe under this Agreement. To the extent permitted by law, I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds paid to Lender do not pay off all amounts I owe Lender under this Agreement, I remain responsible for payment of the balance of any amounts due under this Agreement.

**LENDER PLACED INSURANCE.** If at any time I fail to buy or keep in force Required Insurance, Lender may, but is not required to, purchase Required Insurance at my expense to protect Lender's interest in the Property. I agree that Required Insurance may, but to the extent permitted by law, need not, protect my interests. The coverage purchased by Lender may not pay any claim I make. I agree that the cost of Required Insurance purchased by Lender may be much more than the cost of Required Insurance I could have obtained on my own, and I agree that the cost of such Required Insurance may, to the extent permitted by law, be added to my loan balance and accrue interest at the Contract Rate. I authorize Lender to release to third parties any information necessary to monitor the status of Required Insurance on my Property and to purchase Required Insurance required by this Agreement.

**VOLUNTARY CREDIT INSURANCE.** Lender's affiliate may provide the credit insurance that I voluntarily select. Lender and/or its affiliates expect to profit from my purchase of voluntary credit and personal property insurance and I consent to this. The terms "credit insurance" and "credit life insurance" include debtor group life insurance, where offered.

**ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.** I, where authorized by law, hereby assign to Lender any moneys, not in excess of the unpaid balance of indebtedness which this instrument secures, which may become payable under any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance), including return of unearned premiums, and direct any insurance company to make payment directly to Lender to be applied to said unpaid indebtedness and I hereby appoint Lender as my attorney-in-fact to endorse any draft, check or other papers necessary to obtain such insurance payments.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to: (a) correct any clerical errors that were made in connection with loan documents; (b) obtain the correct amounts due to others; and (c) release all liens upon payment in full. Lender may consider any breach of this requirement as an event of default of this Agreement.

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval of or commitment to make this loan if Lender reasonably believes that: (a) there are material omissions or misrepresentations in connection with my credit application; (b) there is a material, adverse change in my creditworthiness; (c) there are additional liens on the right, title, or interest of any Collateral to be used for this loan; or (d) a sale or transfer of any right, title, or interest in any Collateral to be used for this loan has or will occur that is not agreed to by the Lender.

**SEVERABILITY.** The fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any party without the express written consent of Lender.

**SEE REVERSE SIDE FOR ADDITIONAL INFORMATION**

**DEFAULT.** Except as prohibited by law or as limited by other provisions of this Agreement, I will be in default of this Agreement if any one of the following occurs:

- A. I fail to make any payment under this Agreement when due.
- B. I fail to do anything else I have agreed to do in this Agreement.
- C. Any statement or representation I made in my credit application is untrue or incorrect.
- D. I fail to provide Lender with proof of employment, residence, insurance, or repair to credit history within three (3) business days after Lender's written request for this information.
- E. I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.
- F. Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.
- G. Any police or governmental agency seizes or impounds the Collateral, if the Collateral consists of personal property, or starts forfeiture proceedings against the Collateral.
- H. If the Collateral consists of personal property, I relocate to another state without giving written notice at least 30 days before relocating.
- I. I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.
- J. Any other event or circumstance occurs that reasonably causes Lender to deem itself insecure or to believe that Lender's prospects for payment or realization upon the Collateral are impaired, unless prohibited by state law.

**(For Kansas residents only,** Lender believes the preceding events would significantly impair the prospect of payment, performance, or realization of Collateral. Except for a default resulting from my failure to make any payment as required by this Agreement, the burden of establishing the prospect of such significant impairment is on the Lender.)

**GENERAL REMEDIES.** If I am in default on this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions as permitted by law and this Agreement, all of the remedies permitted by law and this Agreement, including:

- A. Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue finance charges from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.
- B. Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges from the date paid at the Contract Rate until repaid in full to Lender.
- C. If the Collateral consists of personal property, Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.
- D. If the Collateral consists of personal property, Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses.
- E. Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.
- F. If the Collateral consists of real property, Lender may begin foreclosure proceedings as described in the mortgage or deed of trust granting Lender a security interest in the Collateral.
- G. Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit or personal property insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.
- H. Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights are hereunder cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral if it is personal property, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral securing this Agreement and taken into possession as provided above.

**WAIVER.** Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default, or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law.

**NOTICES.** If required by law, Lender will provide me with notices under this Agreement, if mailed, to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

**DELAY IN ENFORCEMENT.** Lender may delay enforcing any of its rights under this Agreement without losing them.

**SAVINGS CLAUSE.** All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then: (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the Principal, as defined below, that I owe under this Agreement or making a direct payment to me. To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

> The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement:
>
> **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

> I/We acknowledge that my/our monthly scheduled payments under my/our Agreement with Lender do not include payments for property taxes (or special assessments), or premiums for insurance covering the property. There are no escrow or impound accounts under my/our Agreement.
>
> I/We agree to make required payment(s) to the appropriate taxing authority and/or insurance provider as they are due.

**SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION**

**INTEREST BEARING LOAN.** I agree to pay to the order of Lender all Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the amounts and on or before the dates set forth in the Payment Schedule in the Truth in Lending Disclosures on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. If the "Adjustable Rate Loan" box is checked above, the Contract Rate and the monthly payment amounts may change as set forth therein. If I have not purchased credit insurance or have purchased single premium credit insurance, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) interest; and (c) unpaid Principal. If I have purchased credit insurance that is billed on a monthly basis, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) any past due credit insurance premiums billed on a monthly basis; (c) any past due loan payment(s); (d) currently due credit insurance premiums that are billed on a monthly basis; and (e) currently due loan payment. When applying payments to past and currently due loan payments, monies will be applied first to accrued interest with the remainder, if any, being applied to unpaid Principal. Because interest on my loan is earned daily, early payments will decrease the amount I owe, and late payments will increase that amount. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full.

**PRINCIPAL.** Principal is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed.

☐   **BALLOON PAYMENT.** If checked, my last scheduled payment is larger than my regular scheduled payments ("Balloon Payment"). I agree that, unless Lender has agreed to refinance my Balloon Payment, I must pay the full amount of my Balloon Payment from my own resources or by refinancing my loan with another lender on or before the due date of my Balloon Payment.

**PREPAYMENT REFUND.** I may prepay all or any part of my loan at any time. The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law.

**LATE CHARGE.** I agree to pay any late charge described in the Truth in Lending Disclosures herein.

**DISHONORED CHECK CHARGE.** If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $30.00 .

**DEFAULT COSTS.** In the event of default, I will pay to the extent permitted by law: (a) the reasonable expense Lender incurs in realizing on any security interest in connection with this Agreement; and (b) if the Amount Financed exceeds $25,000, reasonable attorney fees.

**GOVERNING LAW.** The laws of the State of Iowa shall govern this Agreement, except as preempted by federal law.

**THIS IS A CONSUMER CREDIT TRANSACTION.**

**PLEASE SEE IMPORTANT INFORMATION ON REVERSE**

**ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

IF I DEFAULT AND THIS LOAN IS SECURED BY A DEED OF TRUST ON MY HOME, I MAY LOSE MY HOME.

IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT. This notice applies only to loans made primarily for a personal, family, or household purpose where the principal amount of the loan is greater than $20,000.

---

BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.

UNARBT (8-12-01)

---

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of this Agreement, the Truth in Lending Insurance Disclosures, the Privacy Notice, the Personal Property Appraisal Form (if applicable), and two copies of a Notice of Right to Cancel (if applicable) and agree to be bound thereby.

NOTICE TO CONSUMER: 1. Do not sign this paper before you read it. 2. You are entitled to a copy of this paper. 3. You may prepay the unpaid balance at any time and may be entitled to receive a refund of unearned charges in accordance with law. 4. If you prepay the unpaid balance, you may have to pay a minimum charge not greater than seven dollars and fifty cents.

x _____   x _____ L.S.
Witness                          Borrower   YODYUK NEELEY

x _____   x _____ L.S.
Witness                          Co-Borrower   TERRY A NEELEY

                                 x _____ L.S.
                                 Co-Maker
                                 Print Name: _____

                                 x _____ L.S.
                                 Co-Maker
                                 Print Name: _____

## NOTE ALLONGE

THIS ENDORSEMENT IS INCORPORATED INTO AND SHALL BE DEEMED PART
OF THE NOTE TO WHICH IT IS ATTACHED.

| | |
|---|---|
| Borrower 1: | YODY K NEELEY |
| Borrower 2: | TERRY A NEELEY |
| Date of Loan: | 7/20/2007 |
| Loan Amount: | $40,003 |
| Property Address: | 9093 NEWTON ST. |
| City, State, Zip: | GRINNELL, IA 50112 |

*Pay to the order of:*

Without recourse

SPRINGLEAF FINANCIAL SERVICES, INC. F/K/A AMERICAN GENERAL
FINANCIAL SERVICES, INC.

Stephen L. Day
Vice President

D  Rec Fee  11.00
G
A  E-Fee  1.00
S
E  Trans Fee _____

Doc ID:  001654050002 Type: GEN
Recorded: 07/23/2007 at 01:45:14 PM
Fee Amt: $12.00 Page 1 of 2
Jasper County, Iowa
Nancy Parrott County Recorder
File 2007-00004490

This instrument prepared by:
AND RETURN TO: MISTRY MAXWELL FOR AMERICAN GENERAL FINANCIAL SERVICES, INC.
(name)
2501 S CENTER ST., MARSHALLTOWN, IA 50158
(address)                                    (city/state/zip)

(telephone #)

## REAL ESTATE MORTGAGE

**AMERICAN GENERAL FINANCIAL SERVICES**

Terry A. Neeley and Yody K. Neeley, Husband and Wife, As Mortgagors
Joint Tenants with full rights of survivorship and not as tenants in common
are indebted to American General Financial Services, Inc., Mortgagee on their Promissory Note/Loan Agreement of even
date herewith in the amount of $ 39229.00 _____ and evidencing a loan made by said Mortgagee. According to the
terms of said note/loan agreement, payment may be made in advance in any amount at any time and default thereunder as
defined in Section 5.109 of the Iowa Consumer Credit Code, and subject to Sections 5.110 and 5.111 of said code, shall, at
the option of the holder thereof and without notice or demand unless required by law, render the entire unpaid balance
thereof at once due and payable, less any required refund or credit or finance charge and may be
foreclosed by action in court by equitable proceedings.

NOW THEREFORE, in consideration of said loan and to further secure the payment of said note/loan agreement and
any note/loan agreement or notes/loan agreements executed and delivered to Mortgagee by Mortgagors at any time before
the entire indebtedness secured hereby shall be paid in full evidencing a refinancing of any unpaid balance of the note/loan
agreement above described or renewal thereof, or both, such refinancing not exceeding a total indebtedness of more
than $39229.00 _____ at any time, the Mortgagors do hereby convey to the Mortgagee, its successors and assigns forever
the tract of real estate hereinafter described; provided, however, if the Mortgagors well and truly pay and discharge said
note/loan agreement or notes/loan agreements according to the terms thereof, then these presents shall cease and be void.

It is hereby agreed that said Mortgagor shall pay all taxes and assessments levied upon said real estate before the
same shall become delinquent, and in case not so paid, the holder of this mortgage may pay such taxes or assessments
and be entitled to interest on the same at the rate provided in the note/loan agreement secured hereby, and this mortgage
shall stand as security for such taxes, assessments and interest so paid. That so long as this mortgage shall remain
unpaid the said Mortgagor shall keep the buildings thereon insured in some responsible company or companies, which shall
be satisfactory to the holder of this mortgage for the use and security of said Mortgagee in the sum of not less than
$ 39229.00 _____ and shall deliver the policies and renewal receipts therefor to said Mortgagee, and if the
said Mortgagor fails to effect such insurance in manner as agreed, then said Mortgagee may effect such insurance, and
amount paid for such purposes by the Mortgagee shall be recovered from Mortgagor with interest thereon at the rate
provided in the note/loan agreement secured hereby, and shall be a lien upon the foregoing premises, under and by virtue
of this mortgage.

If the tract of real property described herein is less than ten (10) acres in size, it is further hereby agreed, pursuant to
Section 628.26, Code of Iowa, that the period of redemption after sale on foreclosure of this mortgage shall be reduced to
six (6) months, provided Mortgagee waives in the foreclosure action any right to a deficiency judgment against the
Mortgagors which might arise out of the foreclosure proceeding. If the tract of real property described herein is less than
ten (10) acres in size, it is further hereby agreed, pursuant to Section 628.27, Code of Iowa, that the court in a decree of
foreclosure may find affirmatively that said tract has been abandoned by the owners and those persons personally liable
under this mortgage at the time of such foreclosure, and should the court so find, and if Mortgagee shall waive any rights to
a deficiency judgment against the Mortgagors or their successors in interest in the foreclosure action, then the period of
redemption after foreclosure shall be reduced to sixty (60) days.

The Mortgagors covenant that they exclusively possess and own said property free and clear of all encumbrances
except as otherwise noted, and that they will warrant and defend the same against the claims and demands of all persons
except the Mortgagee. The Mortgagors hereby relinquish all contingent rights in and to the mortgaged property, including
the right of dower and homestead. Any failure of the Mortgagee to enforce any of its rights or remedies hereunder shall not
be a waiver of its right to do so thereafter. Whenever the context so requires, plural words shall be construed in the
singular.

If this Mortgage is junior to another mortgage or mortgages, then default by the Mortgagor according to the terms of
said mortgage or mortgages shall constitute default of this mortgage.

☐ Unless checked, this transaction is subject to the Iowa Consumer Credit Code.

DESCRIPTION OF MORTGAGED REAL ESTATE:

The West 50 feet of Lots 3 and 4 and all of Lot 5 in Block 4 in the Village of Newburg, Jasper
County, Iowa, EXCEPT railroad right of way.

situated in the County of _____ Jasper _____ State of Iowa.
Dated this  20th  day of  July  , 2007.
IAA441 (03-06-05) Real Estate Mortgage

$ 12.00 pd.
Amer Gen Finance Service
(en)

CK

EXHIBIT
B

### WAIVER OF HOMESTEAD EXEMPTION

I understand that homestead property is in many cases protected from the claims of creditors and exempt from judicial sale; and that by signing this contract, I voluntarily give up my right to this protection for this property with respect to claims based upon this contract.

Dated   July 20th           ,   2007 .

Yody K. Neeley

Terry A. Neeley                                    Mortgagors

The Following Notice Applies to Consumer Credit Transactions Only:

NOTICE TO CONSUMER: 1. Do not sign this paper before you read it. 2. You are entitled to a copy of this paper. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

Yody K. Neeley                                    ← Sign here

Terry A. Neeley                                   ← Sign here

STATE OF IOWA

COUNTY OF   Jasper                          SS.

On this   20th   day of   July                                    , 2007 , before me, a Notary Public in and   for   Marshall                      County,   State   of   Iowa,   personally   appeared
Yody K. Neeley                 and   Terry A. Neeley                          , to me know to be the identical persons___  named in and who executed the foregoing instrument and acknowledged that _they_ executed the same as _their_ voluntary act and deed.

(S E A L)

Acknowledging
officer
sign here

Mistry Maxwell

Notary Public in and for   Marshall                County, Iowa

My Commission Expires: July 18   2009

MISTRY MAXWELL
NOTARIAL SEAL-IOWA
COMMISSION NO. 723506
MY COMMISSION EXPIRES: July 18 2009

IAA442 (03-06-05) Real Estate Mortgage

**Unique Doc ID: 270065**
**Recorded: 4/14/2014 at 2:10:06.777 PM**
**Fee Amount: $37.00**
**Revenue Tax:**
**Jasper County, Iowa**
**Nancy Parrott RECORDER**
**Instr. Number: 201400001738**

WHEN RECORDED MAIL TO:
SPRINGLEAF FINANCIAL SERVICES, INC.
PO BOX 969
EVANSVILLE, IN 47706-0969

WHEN RECORDED SEND TO:
TITLE FIRST AGENCY
2944 FULLER AVE NE, STE 200
GRAND RAPIDS, MI 49505

⊘ **Springleaf**
Financial

This instrument was prepared by HEATHER HART   PO BOX 969 EVANSVILLE,  IN 47706

[Space above This Line for Recording Data]

## LOAN MODIFICATION AGREEMENT
**(For Modifying Non Recourse Closed End Interest Bearing Mortgage Loans)**

| Security Instrument Filing Data. | |
|---|---|
| Instrument Dated | JULY 20, 2007 |
| Recorded on | JULY 23, 2007 |
| Office Recorded in | JASPER COUNTY |
| County | JASPER COUNTY |
| Location | GRINNELL, IA 50112 |
| Book/Volume/Liber | |
| Page | |
| File | |
| Doc/Instrument Number | |

*Legal Located on Page 2*

PARCEL# 0524126005

This Loan Modification Agreement ("Agreement"), effective on 02/01/14 (the "Modification Effective Date") by and between _____

TERRY A NEELEY AND YODY K NEELEY

("Borrower") and SPRINGLEAF FINANCIAL SERVICES, INC.   F/K/A  AMERICAN GENERAL
FINANCIAL SERVICES, INC _____ ("Lender"), modifies, amends, and supplements (to the extent this Agreement is inconsistent with their terms): (1) the Mortgage, Deed of Trust, Deed to Secure Debt, or Security Deed ("Security Instrument"), as set forth herein above, and the Rider(s), if any, and (2) the Loan Agreement ("Note") to Lender, dated JULY 20, 2007 _____, and secured by the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property" located at:

9093 NEWTON ST                         GRINNELL, IA 50112

| Co#   1056 | | MLO# |
|---|---|---|

UNMA41 (04-17-11) C.E. I.B. Modification Agreement                         Page 1 of 6

┌─────────────┐
│  EXHIBIT    │
│             │
│    B1       │
└─────────────┘

If this Agreement is to be recorded, the real property described is set forth as follows:
THE WEST 50 FEET OF LOTS 3 AND 4 AND ALL OF LOT 5 IN BLOCK 5 IN THE VILLAGE OF
NEWBURG, JAPSER COUNTY, IOWA, EXCEPT RAILROAD RIGHT OF WAY.

PARCEL# 0524126005

This Agreement also supersedes and replaces any prior loan modification agreement(s) between
Lender and Borrower as of the effective date of this Agreement.

Terms not defined in this Agreement are as defined in the Note and/or Security Agreement.

As of the Modification Effective Date, the amount of the principal balance payable under the Note and
the Security Instrument (the "Unpaid Principal Balance") will be $___36448.81__, consisting of the
unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized, if
permitted by law.

In consideration of the mutual promises and agreements contained herein, Borrower and Lender
(together the "Parties") agree that beginning on the Modification Effective Date, and after both Parties
have executed this Agreement, (notwithstanding anything to the contrary contained in the Note or
Security Instrument):

1.  The interest rate on the Unpaid Principal Balance will begin to accrue as of the date of this
    Agreement at _8.10_%. $_____0.00_ of the Unpaid Principal Balance shall be deferred (the
    "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this
    amount. The Unpaid Principal Balance less the Deferred Principal Balance shall be referred to as
    the "Interest Bearing Principal Balance" and this amount is $___36448.81_. The unpaid and
    deferred interest that has not been capitalized (the "Deferred Interest") will be $_____0.00_.
    Assuming no additional sums are advanced under the Note and assuming that all monthly
    payments are made in full and on time, my payment schedule, including my monthly
    payments and interest rate, based on the current principal balance, will be:

| Months | Interest Rate | Interest Rate Change Date | Monthly Payment | Estimated Monthly Escrow Payment* | Total Monthly Payment* (if escrowed) | Payment Begins On |
|---|---|---|---|---|---|---|
| 001 - 036<br>037 - 480 | 8.10<br>10.46 | 01/01/14<br>01/01/17 | 256.17<br>320.93 | 144.02<br><br>May adjust periodically<br><br>May adjust periodically<br><br>May adjust periodically | 400.19<br><br>May adjust periodically<br><br>May adjust periodically<br><br>May adjust periodically | 02/01/14<br>02/01/17 |

*The escrow payments may be adjusted periodically in accordance with applicable law and
therefore my total monthly payment may change accordingly.

2.  Remaining Term: If Borrower still owes amounts under the Note and the Security Instrument, as
    amended by this Agreement on the maturity date ("Maturity Date"), those amounts will be
    immediately due and payable on the Maturity Date by the Borrower.

    The new Maturity Date will be 01/01/54.

3.  Place of Payment. Borrower must continue to make the monthly payments in the manner and at
    such place as Lender may require.

UNMA42 (04-17-11) C.E. I.B. Modification Agreement

4.  <u>Funds for Escrow Items.</u>  Borrower and Lender expressly covenant and agree, that until all indebtedness owing on said Note and Security Instrument (Hereinafter referred to as "Loan Documents") or any renewal thereof is paid, Borrower will keep all Required Insurance premiums, taxes, governmental assessments, levies, and charges against said premises that could encumber said Real Estate paid as they become due.  Borrower's failure to keep such insurance coverage, taxes and charges current, as described in the preceding sentence, may result, at Lender's option, without waiving any of its other rights or remedies and after giving any notice required by law, in Lender paying said insurance, taxes or charges, and the amount so paid, with interest thereon at the rate described in said Loan Documents; will be and become a part of the indebtedness secured by this Agreement.  Lender may elect, the law may require, or Borrower may request that Lender maintain an escrow fund for payment of real estate taxes, assessments, insurance premiums, or other obligations that might encumber the Real Estate if not timely paid when due.  If so elected, if required by law, or if Borrower's request is granted, Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the property that secures Borrower's Note ("Property"); (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed.  These items are called "Escrow Items."  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount and interest as allowed by law.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this section.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.

UNMA43 (04-17-11) C.E. I.B. Modification Agreement                                    Page 3 of 6

Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA but generally in no more than 12 monthly payments, but Lender may in its sole discretion allow Borrower to make up the initial shortage at the time of the execution of this Agreement in no more than 60 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but generally in no more than 12 monthly payments, but Lender may in its sole discretion allow Borrower to make up the initial deficiency at the time of the execution of this Agreement in no more than 60 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5.  _Application of Payments._ All payments will be applied in the following order: (a) other charges provided in the Loan Documents or otherwise allowed by law; (b) late charges; (c) any past due credit insurance premiums billed on a monthly basis; (d) any charges for Escrow Items due; (e) any past due loan payment(s); (f) currently due credit insurance premiums that are billed on a monthly basis; and (g) currently due loan payments. When applying payments to past and currently due loan payments, monies will be applied first to accrued interest, with the remainder, if any, being applied to unpaid Principal. Because interest on Borrower's loan is earned daily, early payments will decrease the amount Borrower owes, and late payments will increase that amount. The payment schedule assumes that Borrower will make each payment on the day it is due; therefore, Borrower's final payment will be adjusted as appropriate to reflect any variation in the actual dates Borrower's payments are received by the Lender. If any unpaid amounts remain due to Lender after Borrower's final scheduled payment due date, Borrower agrees to pay interest on these unpaid amounts, computed at the interest rate as provided in the Loan Document (or if a loan modification agreement is executed, at the interest rate(s) provided in the loan modification agreement), until paid in full, to the extent permitted by applicable law.

6.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

7.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date of this Agreement:

    (a)    All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

UNMA44 (04-17-11) C.E. I.B. Modification Agreement                                    Page 4 of 6

(b)    All terms and provisions of any adjustable rate rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

8.   Borrower understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e)    ☐ If checked, I was discharged in a bankruptcy proceeding subsequent to the execution of the Note and Security Instrument. Based on this representation, notwithstanding anything to the contrary in the Agreement, Lender agrees that I will not have personal liability on the Note and Security Instrument pursuant to this Agreement.

(f)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

Except where otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

In Witness Whereof, Lender and Borrower have executed this Agreement.

*Springleaf Financial Services, Inc.*

_____
LENDER

By: _____

**Zach Burton**

_____
Borrower
YODY K NEELEY

_____
Borrower
TERRY A NEELEY

_____  1·3·14
Witness Signature          Date

UNMA45 (04-17-11) C.E. I.B. Modification Agreement

Page 5 of 6

STATE OF IOWA _Poweshiek_____, County ss:

On this _Third_ day of _January_____, _2014_, before me, a Notary Public in and for

_____ County,    State    of    Iowa,    personally    appeared

TERRY A NEELEY  AND  YODY K NEELEY_____ to me known to be the identical

PERSON(S)_____ named in and who executed the foregoing instrument and acknowledged that _THEY___ executed the same as

THEIR____ voluntary act and deed.

(Seal)

> Acknowledging
> Officer
> Sign Here

_Lyndee Hashman_____

Notary Public in and for _Poweshiek_____, County, Iowa.

My Commission expires: _October, 8th 2016_.

Lyndee Rae Hashman



LYNDEE RAE HASHMAN
Commission Number 780739
My Commission Expires
October 8, 20_16_

STATE OF INDIANA, COUNTY OF _VANDERBURGH_____ ss:

    Before me, _HEATHER C HART_____, a Notary Public in and for said County
and State, hereby certify that _Zach Burton_____
_SPRINGLEAF FINANCIAL SERVICES, INC., MORTGAGE LOAN ORIGINATOR_
whose name is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged
before me on  this day that, being informed of the contents of the conveyance, he/she/they executed
the same voluntarily on the day the same bears date.

    WITNESS my hand and official seal in the county and state aforesaid this _13ᵗʰ_ day of
_JANUARY__, _2014_

(SEAL)

My Commission expires:
_MAY 19, 2021_____

_Heather C Hart_

                                            Notary Public
                                            HEATHER C HART

**HEATHER C. HART**
**Notary Public, State of Indiana**
**SEAL**
**My Commission Expires 5/19/2021**

INMN11 (04-18-10) Modification Notary

Unique Doc ID: 306691
Recorded: 8/21/2018 at 9:37:39.0 AM
Fee Amount: $12.00
Revenue Tax:
Jasper County, Iowa
Denise Allan RECORDER
Instr. Number: 201800004690

Prepared By: Bernardo Hernandez, NATIONSTAR MORTGAGE DBA MR. COOPER 8950
CYPRESS WATERS BLVD, COPPELL, TX 75019 1-888-480-2432

Return By Mail To:
DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

## CORPORATE ASSIGNMENT OF MORTGAGE

Jasper, Iowa
SELLER'S SERVICING ▉▉▉▉▉▉ "NEELEY"

Date of Assignment: August 16th, 2018
Assignor: U.S. BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR SPRINGLEAF
MORTGAGE LOAN TRUST 2012-1, BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT at
8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER at 8950 CYPRESS WATERS BLVD.,
COPPELL, TX 75019

Executed By: TERRY A. NEELEY AND YODY K. NEELEY, HUSBAND AND WIFE, AS JOINT TENANTS
WITH FULL RIGHTS OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON To: AMERICAN
GENERAL FINANCIAL SERVICES, INC.
Date of Mortgage: 07/20/2007 Recorded: 07/23/2007 as Instrument No.: 2007-00004490 In the County
of Jasper, State of Iowa.

-POWER OF ATTORNEY Dated: 03/16/2018 Recorded: 07/17/2018 as Instrument No.: 2018-02101,
between U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF
MORTGAGE LOAN TRUST 2012-1 and NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER,

Property Address: 9093 NEWTON ST, GRINNELL, IA 50112

Legal: N/A

POWER OF ATTORNEY RECORDED ON 08/14/2018 IN INSTRUMENT NO. 201800004537 IN
JASPER COUNTY, IOWA

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $39,229.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the
Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

  U.S. BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE
LOAN TRUST 2012-1, BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT
On August 16th, 2018

By:_____
MOHAMED HAMEED, Vice-President

+-------------------+
|     EXHIBIT       |
|                   |
|        C          |
+-------------------+

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Texas
COUNTY OF Dallas

On August 16th, 2018, before me, OMAR BASPED, a Notary Public in and for Dallas in the State of
Texas, personally appeared MOHAMED HAMEED, Vice-President, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

OMAR BASPED
Notary Expires: 12/04/2019 #130458850

> OMAR BASPED
> Notary Public, State of Texas
> Comm. Expires 12-04-2019
> Notary ID 130458850

(This area for notarial seal)

Unique Doc ID: 281260
Recorded: 8/31/2015 at 12:35:27.47 PM
Fee Amount: $7.00
Revenue Tax:
Jasper County, Iowa
Denise Allan RECORDER
Instr. Number: 201500004957

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Document Prepared By:
R.Lance/NTC, 2100 Alt. 19 North,
Palm Harbor, FL, 34683

Loan No ▮▮▮▮▮▮▮
Springleaf Loan N ▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

Regarding this instrument, contact Nationstar Mortgage, LLC, 4000 Horizon Way, Irving, TX 75063, telephone # 972-956-6320, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, SPRINGLEAF FINANCIAL SERVICES, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC., WHOSE ADDRESS IS 601 N.W. SECOND St., EVANSVILLE, IN, 47708, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN TRUST 2012-1, WHOSE ADDRESS IS C/O 4000 HORIZON WAY, IRVING, TX 75063, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage dated 07/20/2007, executed by YODY K. NEELEY AND TERRY A. NEELEY (grantor) to AMERICAN GENERAL FINANCIAL SERVICES, INC. (grantee) and recorded in Book , Page , and/or Document # 2007-00004490 in the office of the Recorder of JASPER County, State of Iowa.

Modification: DATED DATE 01/03/2014 RECORDED DATE 04/14/2014 INST 201400001738.

Dated this 31st day of August in the year 2015
SPRINGLEAF FINANCIAL SERVICES, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC.

_____
NADINE HOMAN
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 31st day of August in the year 2015, by Nadine Homan as VICE PRESIDENT of SPRINGLEAF FINANCIAL SERVICES, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
NICOLE BALDWIN
COMM EXPIRES: 08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016


NEELEY          KASOTA
CHIM

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Terry Allen Neeley** |
| | First Name      Middle Name      Last Name |
| Debtor 2 | **Yody Kay Neeley** |
| (Spouse if, filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF IOWA |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion If any |
|---|---|---|---|---|
| **2.1** Mr. Cooper | Describe the property that secures the claim: | $35,688.00 | $15,000.00 | $20,688.00 |

Creditor's Name

Describe the property that secures the claim:
**9093 Newton St Grinnell, IA 50112 Jasper County**
**The West 50 feet of Lots 3 and 4 and all of Lot 5 in Block 5 in the Village of Newburg, Jasper County, Iowa, except railroad right of way;**

**property acquired in June 1996**

**PO Box 619094**
**Dallas, TX 75261**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
■ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)      **Mortgage**

Date debt was incurred _____      Last 4 digits of account number      **7804**

| **2.2** **Veridian Credit Union** | Describe the property that secures the claim: | $22,825.00 | $23,000.00 | $0.00 |
|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:
**2015 Subaru Outback 23,000 miles**

**PO Box 6000**
**Waterloo, IA 50704**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

EXHIBIT

D

Official Form 106D          Schedule D: Creditors Who Have Claims Secured by Property          page 1 of 2

| Debtor 1 | **Terry Allen Neeley** | | | Case number (if know) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | **Yody Kay Neeley** | | | | |
| | First Name | Middle Name | Last Name | | |

☐ Check if this claim relates to a    ■ Other (including a right to offset)    **Security Agreement**
community debt

Date debt was incurred    **February
2018**    Last 4 digits of account number

| Add the dollar value of your entries in Column A on this page. Write that number here: | $58,513.00 |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $58,513.00 |

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐    Name, Number, Street, City, State & Zip Code
**Petosa Law LLP
1350 N.W. 138th St. Suite 100
Clive, IA 50325**

On which line in Part 1 did you enter the creditor?    **2.1**

Last 4 digits of account number    ___

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 2